Our final case this morning is number 14-1417, Ordorstar Technology LLC v. SMM Distributors, Mr. Coyne. Thank you, Your Honor. Judge Dyke, Judge Wallach, with me at the counsel table is Partha Kumar, one of my colleagues. This appeal really involves one fundamental issue, and that is did the district court properly construe the term WIC means in this patent for a deodorizer? The law of the circuit is very clear under JVW, under microchemical, a number of other cases that are cited in our briefs. It is the claimed function for that means, not other functions in the specification. And then you look at all of the structure. You say throughout this thing that claim one includes no functional requirement that the WIC means absorb water outside the compartment. Yes. If water doesn't come from outside the shell, where's it coming from? The water does come from outside the shell, but it's not necessary that it come through the WIC. Your Honor, if you could look at page A-47 of the joint appendix, is the 661 patent. At the top of column 7 specifies that there are different ways to construct this device. You could have an impervious shell to which water cannot pass. And at column 7, line 50, it makes it very clear that the only way for water to get in in that configuration is through the WIC. But if you look at the top of column 8, it also provides an alternative embodiment. Namely, it's page A-47, column 8, starting at line 1. And it reads, in another embodiment, the membrane shell 22 is permeable to liquid, water and chlorine dioxide solution, and gas, chlorine dioxide gas. In this embodiment, water can enter the device and aqueous solution that is formed in the device can exit the device by way of the membrane shell. So, that's not the only way for water to get in. But that may be in the specification. Your problem is that the claim language talks about transporting water into said compartment. And the question is, does that mean transporting it from outside into the compartment as the claim construction here specified? And why isn't the language of the claim on the face of it perfectly clear that it has to be transporting water from outside to inside? Well, Your Honor, I'm not going all the way the other way. But it is not perfectly clear that it has to be the WIC transporting the water from outside. And let me explain why. There are three... The point of all these devices is to keep water away from the chemical until it's needed to create a gas. Yes. And the patent provides a number of ways to do that. You can wrap it in a foil pouch. You could have different types. And if I could explain, there are three different ways they do this. One is with a WIC that extends outside. And that can be a permeable or impermeable shell. But in those situations, the WIC clearly is, as Judge Wallach's question pointed out, the way water gets in. Secondly, you could have a permeable shell. And if you look at column six, there's a specific disclosure that the WIC can be merely inserted inside the compartment. So, no, the WIC does not... This specification makes clear that a second group of embodiments is the WIC being fully inside the compartment. Well, whether or not that's true, the problem that you have is that the claim says that the WIC means is for absorbing water and transporting water into said compartment, which suggests that the WIC means is transporting water from outside and inside. Your Honor, I would agree that that is a plausible inference, a suggestion, but the claim is not on its face that clear. And that reading, more importantly, is not consistent with these portions of the spec. There is a third. So we have the first group, which is the nine preferred embodiments, where the WIC is bringing water in from outside. And that's the construction that Judge Middlebrook accepted. The second group is starting at the top of column eight with the disclosure in column six. I have a permeable shell that allows the fully inside. So, yes, in that situation, it would be transporting it from inside more deeply inside. And then there's a third alternative. There is a disclosure at column 13, page A50, in which the acid powder is wrapped in the same wicking material. And it specifically states that the same material that performs the same wicking action. And again, it's the wicking action that's repeated throughout this spec, absorbing water and transporting the water inside or into the compartment. So the question is, does that require that it be from outside? The answer is no. I have three alternatives here, only one of which requires that the WIC transport from outside, two of which, again, they're not preferred embodiments. They are disclosed, however, very clearly. So reading it that way, given the ambiguity of the claim language, which I will concede, reading it that way would eliminate these other two embodiments. And that's not how a means plus function claim should be read. The claim appears to have been written this way to specify the end point of the wicking means without specifying that it has to be starting outside in order to accommodate those other two disclosed sets of embodiments that are non-preferred. If it is read the way the district court read it, it would claim does say is it has to finish up inside and it has to finish up, I'll agree, more deeply inside than it started. So it could be touching the inside of this compartment shell and have to extend in. But aren't there other claims here which are directed to the other embodiments as you describe them? I claim the broadest independent claims are the only ones that would cover those other non-preferred embodiments. The closest it comes is claim 15, which makes it clear, for example, the district court construed it has to be from outside to inside and then on extending into, that it has to go through the membrane shell. If you look at claim 15, page A54 of the Joint Appendix, that's at column 22, that specifically states for that dependent claim of claim 1, that the wicking mean does extend beyond the outer shell. So there's at least a claim differentiation argument that claim 1 is not so limited. It appears to be written so they did specify the endpoint extending farther into, but they didn't specify the starting point, which appears to have been to accommodate these other two non-preferred embodiments. So, Your Honor, yes, I agree that it isn't crystal clear, at least that it does cover that, but it's also not crystal clear in terms of its common ordinary meaning that it excludes it, and excluding it does violence to these other sections of the specification that I mentioned, the wicking means wrapping these acid components, which are, let's face it, this is all cellulose sponge. It's all pieces of cellulose sponge. That's what the defendants are using, and that's one of the specifically disclosed embodiments of the invention here. So the question is, does it have to extend, does the wick have to be the only way water gets in? And the answer from this spec is no. Well, that may be, but you keep having the problem that, like column 8, this other embodiment that you're referring to doesn't describe a wick or wicking means, whereas the claim does. It seems to be irrelevant to the claim that you're looking at. Well, Your Honor, it isn't irrelevant to the claim I'm looking at because the claim is a means plus claim. It's supposed to cover all of the structures that cover that claimed function, and the claim that structure would include, which is column 6, where the wick can be merely inserted. If the wick is merely inserted and the wrapper is impervious, it won't work. Agreed. But if the wrapper is permeable or has holes in it, which are two of these non-preferred embodiments, merely inserting the wick into the compartment will work and it will draw water, it'll absorb water, granted, inside the compartment, and it will also bring it more deeply inside the compartment because it's a sponge. And that is why we say that Judge Middlebrooks erred when he construed it to be limited to these nine preferred embodiments. It does cover these other, at least the broadest independent claims, cover these other non-preferred embodiments as well. The other two issues that are raised by the appellee are the connected to, and again, even if we were to accept that connected to has a common ordinary meaning that requires some physical link, which is what the district court found, this language at column 6 refutes that. So the construction he's adopted is inconsistent with an express statement in the specification that connected to, for example, it says at page A46, column 6, reading from about line 34, 34 to 37, the wick member can be connected to the membrane shell by being directly or indirectly fastened to a portion of the shell, which is the construction the district court adopted, or by being merely inserted into the compartment. The district court's construction reads out that last clause, and that is, in our view, improper, at a minimum, this language would constitute fairly clear lexicography from the patentee that he was intending that the wick could be fully enclosed within the compartment, and that the district court's construction reads that out. Well, column 6 doesn't say that, does it? Well, I'm sorry, Your Honor, it says that the wick member can be merely inserted into the compartment. It doesn't require... That doesn't necessarily suggest that it's contained entirely within the compartment. Okay, Your Honor... Inserting something doesn't mean that it can't stick out still, right? It doesn't mean that it can't stick out, but it doesn't mean that it has to stick out either. The implication... Even if it means it can be inserted all the way in, it doesn't mean that it can be inserted all the way in and not touch the membrane. No, Your Honor, clearly in terms of touching the membrane, we're not contending that it doesn't have to touch the membrane at all. It has to have some connection. As we cited in our brief, if I'm wearing my athletic shirt, it's not fixed to me, but it is touching me, and that's how it's working. It's performing the same kind of wicking action with a capillary action. So, yes, we would concede that it has to be touching the inner surface of the shell in order to be able to absorb water that's brought in through that permeable membrane shell. The last issue... How is that inconsistent with the court's construction, then? Well, the district court specifically addressed this point and cited that particular portion of the specification at page 11 of its opinion, and then at page 12 it expressly rejected it. It acknowledged it, it cited the language verbatim, and it said that's basically inconsistent with my instruction and I'm not going to do it. So he did recognize there was a conflict with that portion of the specification. You agree that the claim construction was right and lose? Your Honor, yeah, absolutely. I agree that if this claim construction is correct, there is no infringement. We do. But we do not believe that it's correct because we thought this is a means plus claim and we don't feel that it was properly construed. The last issue, I feel I have a few minutes before, saving a few minutes for rebuttal time, is this extending into point, which gets back to Your Honor's question. With respect, the district court specifically held that it means sticking into the compartment through the membrane shell. It gets back to the same issue. So yes, we lose. If WIC means is lost, then all of these issues are lost. But if the WIC means is won, if it merits a vacation and remand to the district court, this does not provide an independent grounds for judgment because this interpretation that it has to stick through the membrane shell is incorrect. Quick question before you wrap. Yes, Your Honor. In the appellant's brief, you say, nowhere does Olderstar act as its own lexicographer to limit the claims in this manner, as cited by the district court. In its reply, it says, to the extent the district court considered the common ordinary meaning of connected to to be more limited, the patentee acted as its own lexicographer and gave the Does the 661 patent contain express lexicography? Well, Your Honor, we don't feel that the district court's construction of connected to was correct. But if this court feels that it was, then yes, we did act as our own lexicographer in giving it a contrary meaning, and the district court recognizes that it's contrary. So our position is, as it was in the beginning brief, that we don't think that the ordinary meaning is so limited. But if you feel that it is, it's clearly inconsistent with this specification, and the specification controls under this court's precedent. Your Honor, I'm into my rebuttal time. I'd like to resume. I guess the specification doesn't control what the claim language doesn't include one of the embodiments of the specification, right? Well, Your Honor, if the patentee is given under Phillips under a number of this court's precedents, if we've given that term connected to a different meaning, namely that it can be merely inserted into, and the ordinary meaning is inconsistent. I was talking about the WIC means. I'm sorry? I was talking about the WIC means. Oh, I'm sorry, Your Honor. Yes. On the WIC means, I've explained, but this is limited only to connected to. There is ample evidence of record we've summarized in our reply brief, why extending to creates a genuine issue of fact that does not merit an alternative ground. I'd like to reserve the rest of the time, Your Honor. All right. Mr. Pennington. It's still morning, Your Honor. Good morning. Edward Pennington for the athlete at my table is my colleague, Mr. Sean Phelan. And I'm sorry, I have a little bronchitis. I'm a little hard to hear right now. One thing that I'd like to address is what you seized on. When they were talking about, Mr. Coyne was talking about the different ways water can get into the device. Those are not alternative ways. If you look at Claim 1, Claim 1 says we have a WIC means and it does certain things. It absorbs water and it transports water. That is required. It's not an alternative. You can't put holes in the shell and let water go in that way and avoid the WIC. What you're saying is that in some sense all of those embodiments are a WIC means. I'm saying in every embodiment you have to have a WIC means that transports water. So what he was talking about is an alternative way of getting water into the shell. And if you add different means to it, you don't avoid the fact that you still have to have a WIC. Why is that true? I understand your argument in that respect with respect to the embodiment described in Column 6. But why is that true with respect to the embodiment described in Column 8? It strikes me that that doesn't contemplate a WIC. He said it's permeable. Oh, yeah. Well, that's just another way of getting water in, in addition to having the WIC. Well, we're right. But it doesn't require a WIC. There's an embodiment in Column 8 that doesn't require a WIC. But that's not what is claimed in Claim 1. The Claim 1 requires a WIC. Fair enough. But you said that all the embodiments required a WIC. And I'm just suggesting to you that that's not correct. You're exactly right. The embodiment in Column 8 doesn't require a WIC. You are correct on that. But we're dealing with Claim 1. And Claim 1 requires a WIC. I thought you were going to say the shell actually does a WIC. No. What I will say, though, is this. The court said that we had no WIC. We had no WIC means. And that's very fundamental to this case. The claims require a WIC means. And it's not just a means plus function. But it's one that is connected to and extends into. It's not simply means plus function language. There is structural limitation in the claim. And the reason for that is very important. These devices are all about how you control the introduction of water into the device. You don't want them going off haphazardly because they create a gas. And it's somewhat caustic if you were too close to it. So all these patents that were cited in the file history do the same thing. They have different ways of doing it. And this particular applicant decided to use a WIC to allow water to come into it relatively slowly. That WIC is the water highway through which water comes from the outside to get into the inside. If it wasn't for that WIC and you just poked holes through the whole thing, you could just dump water in and you'd have an immediate reaction and then that would be the end of it. This device is a very, very specific device. The reason you have the word connected in there is that if the WIC was not connected to the shell, there'd be opportunities for the WIC to move around and let's say fall out, for example. And if that were to happen, it would no longer function. So connection is actually part of the functionality of the means plus function. If you were to take a look at A32, which shows the WIC clearly sticking out there, if there was no connection at all and you were just to move this thing around, the WIC could fall out. And it's important that the orientation stay the same. So what if it falls out? That doesn't require it to be connected. It's just more of a faulty device. If it fell out, there'd be no way for the WIC to transport water into the shell. If it was not sticking into the shell, it couldn't transport. So that's why connection is an important limitation. It's not something that we construed as part of the claim language. It's in the claim. And the judge did not, I don't think he construed connection. He denied the opportunity to do so. It just used the ordinary meaning of the word. Connection cannot mean not connected. And so very importantly, what the other side refers to is this language that talks about being merely inserted. If you look at that language, that's not what it says. There are a couple of different ways to do the connection. One is by directly connecting. One is by indirectly connecting. And one is by insertion. But if you read the sentence, it says connection by insertion. If I take insertion to mean loosely inside the pouch, it's no longer connected. So under no circumstance can I construe this or read this claim to say connection is not connected. A perfect example of a connection by insertion is something we mentioned in the lower courts briefing. If I have a wine bottle and I use half the bottle and I want to save the rest and I put the cork in the neck of the bottle, there's an interference fit there. The cork is extending into the neck and it's connected because of the interference. But I can open the wine bottle again by pulling it out if I supply sufficient force. Now, there's not a great deal of detail describing that in the patent, but just look at the drawings. If you look at the drawings like A33, they show how the direct connection can be made. They show a stitching line where the wick is stitched into the pouch. When they're describing the insertion, there's no figure that they're referring to other than figures one through four. If you look at where that language occurs, it's while you're reading, while you're looking at figures one through four. And then if you were to try to help them out and look elsewhere in the patent, there are no drawings where the wick does anything except extend outside the shell. And that brings me to another one of their arguments, which was Mr. Corn was talking about this pouch that has wick-like functionality. That's A39 is some kind of little pouch in figure 15. If you see it in figure 14, there it is. Well, lo and behold, that pouch is all the way inside here, but that's not the wick. The wick is 24. It's not described as a wick, even if the pouch it's contained in is made out of the same material. That's not the wick that is used to bring water in. This is, and you can see it extends out both sides. And in fact, in this embodiment, it extends out all sides. So this thing goes well beyond even the most simple embodiment where it just extends out the top surface. In the embodiment that they're using for support, it actually goes beyond all the surfaces. So I think, Your Honor, what I would say to all of this is, you know, we just didn't have what they claimed. We did not have a wick, or a wick means I brought the product, but I didn't do a notice to the court. Mr. Coyne said he wouldn't mind if we talked about it. I'm happy to show it to you. But what you'll find is those little pellets that we have are just loosely disposed within a pouch, and they're just hanging out in there. There's a separate pouch that contains the active ingredients, and for all our benefit, I removed that before I came into the courtroom. So what we have on the table is just what's actually accused of infringement, and they're just little loose pieces of tiny little sponges, if you want to call them that, that are inside the pouch. They are completely enclosed within the pouch. They cannot possibly bring water from outside to inside as a wick means, which is, again, this is a very, very specific kind of product that they patented. We felt no compunction to try to invalidate it because we don't want to do it. We do it a different way. We do it a more simple way. We add water to the device. We don't wait for water to seep in through a wick. And, Your Honor, the most I can say about this is I've looked through this patent so many times, and I'm sure everybody has, but there's not an embodiment anywhere where there is a wick that is completely enclosed in the shell. And the only thing they can point to, again, is A-37. Again, that is a pouch of active ingredients. It's not the wick. The wick is, if you go back to A-38, there it is. It's a giant sheet just like all the other embodiments. It is a particular kind of product that we just don't use. And then on the inserted in, if you just read the entire sentence and don't focus on inserted in, where it says it is connected by directly, it's directly connected, which would be stitching, indirectly, which if you think about glue, they mention gluing is one way to do it. If this is the wick and this is the shell and I have glue in between, I'd call that an indirect connection because there's a glue interface between the two. If it's by insertion, you have to say, well, what exactly do they mean by that? There's not a whole lot of description. But read the whole sentence. It says connection by this or by this, and the second alternative by this is insertion. It still means connection, connection by insertion. If connection, if insertion means poke the cork all the way into the wine bottle, it's no longer connected to the wine bottle. Nobody in their right mind would say that's connected to the wine bottle. And that's what I would say to their argument, that little bit of description cannot support the notion that a wick can be completely inside the device. Unless you have any questions, that's about all I have. Oh, yeah, I have one question. What do you tell your customers as opposed to what they tell their customers about how to use this thing? Just pour the water in and put it out in the space, right? What I think we do, and again, this is the product that's in all the briefing. You'll see photographs of this. The customer will take this little cup. They'll open this package. They'll pull. This is what goes in here. They fill this with water and they pour it on. So this is not the shell. This is just a mechanism to make this work. Within this pouch, I guess arguably this is the membrane shell. Within here, these are the active ingredients, which I removed this morning by cutting it open and dumping them out. But this is what they're calling the wick. Those little guys right there are just loosely inside here. And if I dump the water in here and all those little squares are properly in the pouch, the water seeps through the membrane shell, if you want to call it that. We call it the teabag because that's exactly the same material that it's made out of. And the water goes into there and it eventually dissolves this package, which contains the active ingredients. The water reacts with the dry constituents. And the pellets are just there to absorb water. What they have found, just from a marketing standpoint, is if I let one of these off in my car because somebody smoked in it, if a cat comes along and knocks it over, that stuff will bleach the heck out of your seat. So it can ruin the interior of a car if it's knocked over. So they put those in there to hold it. And that's another way of controlling the release. It's different from what they're doing. They use the wick to control the introduction of water. Here's how we introduce water. That's not really controlled. It's a controlled amount. But what we're now doing is controlling the evaporation of the product so it doesn't just flash and kill a couple of spores or whatever instantly. So it's a way of timing it out. So thank you. Thank you, Mr. Farrington. Mr. Farrington, we'll give you two minutes here. Thank you, Ryan. With respect to the wick, yes. Whether or not the water is permeable and the water comes in through the shell, we require a wick, too. It's just that simple. With respect to the point that Mr. Farrington made about the limitations, it really does come down to whether the wick has to extend outside. And there's no express language in this claim that says that. Is it ambiguous between the two, whether it does or doesn't? On the literal language of the claim, sure. But the specification makes clear there are these alternatives. And if we look at the alternative, for example, page 39 that Mr. Farrington pointed to is one of the embodiments where we have the acid component in these small pellets of wicking material performing the same wicking action is what the spec says. They aren't rattling around. They are adjacent to and abutting the sides of the shell. That's what these small pellets 34 are. And 34 also depicts those at page 839 at figure 15. So they are comparable to the small pieces of cut-up sponge that are in the accused device. And if we look at 905 and those, I think it was item 24 on those extend on all sides. Right. The preferred embodiments of the invention. Yes, they do. And some of them can go out one side or at least be flush. But on the preferred embodiments, all of them. He's right. There are no drawings showing these alternative embodiments. All the drawings depict the preferred embodiments. If we look at pages 905 and 908 of the joint appendix, it is S.M.M.'s patent that they filed and abandoned after this dispute came up, describing how these pieces of sponge work. And what they say at page 908 at paragraphs 29 and 30 of their own patent application and admission by the party opponent is that they wick water farther into the device. So they're doing the same thing. Are they the same wick as the preferred embodiments? No. Your Honor, I see that my time has ended. Okay. Thank you, Mr. Connolly. Thank you. Thank you, counsel. The case is submitted. And that concludes our session for the day. All rise. The honorable court is adjourned until tomorrow morning at 10 o'clock a.m.